## ELIAS HASKET DERBY, Executor, *v.* RICHARD C. DERBY & others.

A preference in payment of a legacy, when the testator's property proves insufficient to pay all the legacies given by his will, is not to be implied from the fact that the legacy is given by a codicil to an only son and child, the codicil being made shortly after the birth of the son for the express purpose, as it recites, of making a provision for him, when, in the same codicil, the legacies given by the will are confirmed and established; especially when, to some of them, a preference in payment is expressly given by the will; and such legacy must abate in proportion with other unpreferred legacies.

A residuary legacy, in case of short property, is subject to all others, and in case of insufficiency of estate to pay the others, must totally fail.

Legacies bear interest after the time that they are directed to be paid; and if the time of payment be not specially directed, after a year from the death of the testator.

A specific devise and bequest of a mansion-house, with the furniture and other personal property therein, takes precedence in payment over general pecuniary legacies, and does not abate with them in case of short property.

And where such a devise and bequest was made in a codicil, and the will to which the codicil was appended had previously ordered the mansion, with the other real estate, and the personal property of the testator, house, &c. to be sold by the executor for the payment of debts and legacies. *Held,* that the codicil, by this devise and bequest, revoked the power to sell, so far as the mansion-house and personal property therein specifically given was concerned; the disposition made by the codicil of the same being wholly inconsistent with the power and purpose of selling them.

A cemetery lot, in which a former wife of the testator was buried, held not to be embraced within a power of sale given by the testator to his executor to sell his property, describing it by general terms, for the payment of debts and legacies; such a lot not being, without special directions, deemed to be regarded by the testator as property, except for the sacred purpose to which he had dedicated it.

A bequest of $5,000 to the Rev. J. T. S. of Boston, "in trust, to apply the same to the relief of the destitute in such manner as charity is usually distributed by the minister at large in the city of Boston," held good, as a charitable use, both at common law, and under a statute of Rhode Island. The history of this statute traced from a colonial act, passed in 1721, to the Digest of 1844; where it stands, embracing every charitable donation for a specific purpose, and substantially the same as the statute of 43 Elizabeth relating to charitable donations.

BILL IN EQUITY, filed by the plaintiff, as executor of the last will and testament of the late Richard C. Derby, formerly of Boston, Massachusetts, and late of Newport, Rhode Island,

deceased, for the construction of said will, and for the marshalling of the legacies therein given in the order and proportion in which they should be paid, the property of the testator proving insufficient to pay them in full.

All the legatees were served, and answered the bill.

The will, which had three codicils appended to it, was made at Boston, where the testator was then resident, on the 19th day of November, 1840, and gave to his wife the sum of $12,000, deposited with the Massachusetts Hospital Life Insurance Company, to the interest of which, during life, she was entitled by marriage settlement, and the further sum of $34,000, to draw interest from the death of the testator, in lieu of dower; to his step-daughter, Louisa F. Lear, the sum of $6,000; to his servant, James Purrow, the interest during life of $4,000, to be invested in mortgage, in trust, and, at the death of his said servant, to fall into the residue of his estate; and to his nephew and executor, the plaintiff, the sum of $3,000, payable at the decease of the testator—all which legacies were, in case of deficiency of estate to satisfy all the provisions of the will, by the express direction of the will to be preferred in payment. The will also gave a legacy of $5,000 to the Boston Asylum and Farm School for indigent boys; a legacy of $2,500, to the Boston Female Orphan Asylum, and a legacy of $5,000 " to the Rev. John Turner Sargent, in trust, to apply the same to the relief of the destitute, in such manner as charity is usually distributed by the ministers at large in the city of Boston." Many other pecuniary legacies of different amounts were given by the will to the nephews and nieces of the testator, some directly, and some in trust; and the residue of his estate was given equally to all his nephews and nieces, one nephew only being expressly excepted by name. For the payment of these legacies, pecuniary and residuary, the executor was empowered " to sell and convey, either by public or private sale, *all real estate*," left by the testator at the time of his decease, "and to convert into money" all the stocks, mortgages, and other property of the testator; the residue above given being described as " all the residue of my estate, whether real, personal, or mixed, thus converted into money, which shall remain after the payment of the

debts, funeral expenses, and above legacies," meaning the pe-
cuniary legacies of the testator,

The first codicil to the will, which was executed by the testa-
tor on the 18th day of November, 1845, whilst he was still a
resident of Boston, after stating, to obviate all questions which
might arise, that the further legacy given by his will to his wife
was *in addition* to the sum of $12,000 deposited with the Mas-
sachusetts Hospital Life Insurance Company, bequeathed to
her, all the " wines, plate, jewels, paintings, engravings, statues,
mirrors, whether movable or fixed, furniture, and apparel, and
other similar articles contained in my house, 27 Chestnut-street,"
and " the further sum of $27,000." It also gave to his step-
daughter, Louisa F. Lear, in the event she survive his servant,
James Purrow, and otherwise to her heirs, the reversion of the
sum of $4,000, by the will directed to be invested for his said
servant, and expressly gave priority in payment over all others,
to the legacies given both by his will and codicil to his wife, his
step-daughter, and to his servant, Purrow.

The second codicil to the will, which was executed by the
testator after he had become a resident of Newport, on the 4th
day of May, 1847, after reciting the birth of his son on the
April previous, and his desire, notwithstanding, " to renew and
confirm the several specific bequests and legacies set forth in "
his will and codicil, " so that no doubt or question shall arise
as to the validity of the same in consequence of the birth of
said son, it being my intention that the same shall not be re-
voked or impaired by or in consequence of such event," and
also reciting, the desire of the testator " to make some provision
for such son, both by specific legacy and by making a further
devise and bequest to my (his) dear wife, Louisa, in addition to
the settlement made upon her and to the several legacies and
bequests given to her by said will, testament, and codicil," goes
on " in the most full and ample manner" to " renew and con-
firm," and to " give, devise, and bequeathe to the several parties
enumerated in said will and testament, and codicil, said specific
bequests and legacies," and " further to change and modify" his
will and testament, by giving to his son the sum of $10,000,
and to his wife, all his real estate in Newport, and all the resi-

due of his estate, whether real, personal, or mixed, which shall remain after satisfaction of his debts and of his specific legacies and bequests, in trust, to apply the same for the benefit of his son and of all other children which she might bear to him.

The third and last codicil, which was executed at Newport, on the 19th day of May, 1848, gave to his wife, " her heirs and assigns forever," all the real estate of the testator situated in the town of Newport, consisting of a lot of land and the buildings thereon, situated on the south side of Williams-street, purchased by the testator of the heirs of Robinson Potter, deceased, and his "lot of land and mansion-house on the south side of Pelham-street in said Newport, together with all my (his) furniture, plate, pictures, statuary; jewels, and all other personal property in my (his) said mansion-house, to hold to her, my (his) said wife, Louisa, her heirs and assigns forever." He then directed this codicil to be annexed to and made a part of his said last will and testament and codicils before made by him, and ratified and confirmed the whole to stand as and for his last will and testament.

The testator died early in April, 1854, and his will was duly proved before the court of probate of the town of Newport, on the 22d day of May of that year. His wife, son, step-daughter, and the Rev. John T. Sargent survived him, but his servant, John Purrow, died before him.

Upon a reference to a master, it appeared that the whole property of the testator amounted to about $135,000, and that there was a deficiency of about $30,000, to satisfy the specific devise and bequest, and the pecuniary legacies, given by the will.

As the special words of the will upon which questions were raised by the executor in his bill, and the questions raised, are stated in the opinion of the court, it is deemed unnecessary to state them here.

*E. H. Derby,* the executor, and *T. A. Jenckes,* for the executor, and the legatees, nephews, and nieces of the testator, insisted mainly upon three points :—

*First,* that the mansion-house of the testator in Newport, valued at about $13,000, together with the furniture and other property in it, valued at about $6,500, specifically given by the

last codicil to the testator's wife, was not by such gift so far taken out of the power of sale vested by the *will* in the executor, as to disenable him from selling them to make up or contribute to any deficiency of property to pay the pecuniary legacies specially given.

*Second,* that the legacy of $10,000 to Richard C. Derby, the infant son of the testator, was to be classed with the unpreferred legacies of the testator, and to abate proportionally with them; and

*Third,* that the legacy of $5,000 to the Rev. John T. Sargent, for charitable uses, was given for too indefinite a purpose to be sustainable.

They cited, as cases to sustain a bill for the construction of a will, *Washburn* v. *Sewall,* 4 Metc. 63 ; *Dominick* v. *Bixby,* 24 Pick. 368 ; *Paine* v. *Prentiss,* 5 Metc. 396 ; *Minot* v. *Boston Asylum,* 7 Metc. 416 ; *Tucker* v. *Seamen's Aid Society,* ibid. 191 ; *Prescott* v. *Prescott,* ibid. 141 ; *Oppenheim* v. *Leo Wolf,* 3 Sandf. Ch. Rep. 571 ; that a court will look at the circumstances under which a testator made his will, as the state of his property and the like, for the purpose of construing it ; *Sandford* v. *Raikes,* 1 Mer. 626 ; *Bettison* v. *Rickards,* 7 Taunt. 105 ; *Doe d. Beach* v. *Earl of Jersey,* 1 B. & A. 550 ; to the meaning of the term, a " specific legacy," as used by the testator, and that it is to be construed as he used it, they cited, Walker's Dictionary ; 1 Bouvier's Law Dict. 311 ; *Smith* v. *Fitzgerald,* 3 V. & B. 5 ; 6 Greenleaf's Cruise, 38, 156, n. ; to point when interest on legacies is payable, 13 Ves. 333 ; 7 Ves. 96 ; 8 Ves. 410 ; 6 Madd. 15 ; *Davis* v. *Swan,* 1 Mass. 208 ; *Sullivan* v. *Winthrop,* 1 Sumn. 1 ; to point that Richard Derby's legacy ought not to be preferred in payment on account of his being the son of the testator, Roper on Legacies, 423 ; that a will and codicil are to be construed together, *Brimmer* v. *Sohier,* 1 Cush. 118 ; that a codicil is deemed a republication of the will, so that lands bought after the will and before the codicil, pass by the will, *Miles* v. *Boyden,* 3 Pick. 216 ; *Brownell* v. *De Wolf,* 3 Mason, 496 ; 7 Ves. 98 ; 1 Hill, 590 ; 7 ibid. 346 ; that a will should be so construed as to avoid repugnancy between different parts of it, *Homer* v. *Shelton,* Ex'r, 2 Metc. 202 ; that

a disposition by the will is not to be disturbed by a codicil further than is absolutely necessary, *Duffield* v. *Duffield*, 3 Bligh, N. S. 261; *Willet* v. *Sandford*, 1 Powell on Devises, 521; Parsons on Wills, 61; *Evans* v. *Evans*, 17 Sim. 84; *Williams* v. *Williams*, 17 Jurist, 1093; *Hearle* v. *Hicks*, Sugden's Law of Property in the House of Lords, 215; nor, if clear and unambiguous, by doubtful words in the codicil, Jarman on Wills, 165, 168; Sugden's Law of Property in House of Lords, 214; Parsons on Wills, 61; that all parts of wills are to be construed together, but if irreconcilable, the *last* parts are to prevail, 2 Blacks. 979; 1 T. R. 630; 6 Ves. 100; 16 ibid. 314; 3 M. & S. 158; 3 Atk. 372; 6 T. R. 314; 2 Taunt. 199; 18 Ves. 421; 6 Moore, 214; that words in a will are to be so construed as to give effect to all of them, *Mackell* v. *Winter*, 3 Ves. 540; *Bell* v. *Phynn*, 7 ibid. 455; *Doe d. Everett* v. *Cooke*, 7 East. 272; that effect is to be given to testator's intention as far as may be, Fonbl. 139; 3 P. W. 250; 4 Ves. 325; 13 ibid. 486; that devise of land subject to a power will be defeated by exercise of the power, *Brayman* v. *Styles*, 2 Pick. 461, 465; Powell on Dev. 292, 302, 310; Co. Lit. 113 *a*, n., 146, 342 *b*, n., 298; *Bergen* v. *Bennett*, 1 Caines's Cas. in Er. 14; *Briggs* v. *Briggs*, 7 Ves. 279; that the exercise of a naked power to sell may be good against heirs and devisees and no repugnancy, 2 Pick. 460; 2 Burr. 1027, 1031; 1 Cush. 93; 7 Cowen, 187; 7 M. & W. 59, 62; that a power to sell to pay legacies is a trust, and if the grantee of the power be a legatee, is coupled with an interest, *Graves* v. *Graves*, 8 Sim. 43, 54–56; that if the legacies be not revoked by the codicil, the power is not, 2 Jarman on Wills, 521; 4 Madd. 187; to point, of what is sufficient to charge real estate with debts and legacies, 1 Roper on Legacies, 665–685; 2 Pow. on Dev. 644; 2 Jarman on Wills, 589; 1 Cruise Dig. 433; 2 Dick. 526; 2 Atk. 268; 4 Madd. 187; that gifts for charitable uses are good in Massachusetts under 43 Elizabeth, *Going* v. *Emery*, 16 Pick. 107; *Burbank* v. *Whitney*, 24 Pick. 136; *Bartlett* v. *Nye*, 4 Metc. 378; *Fountain* v. *Ravenel*, 17 Howard, 369; *In re Henry White*, Trustee, 1 Law Mag.; Professor Hitchcock's will; to point, when a legacy is cumulative to, or a substitute for another in same will, 4 Hare, 216; 2 East. 826; 1 Bro. C. C. 272; 2 Beavan, 215; 2 Russ. & Mylne, 689; 1 M. & K. 589.

*Payne & H. Y. Cranston,* for Mrs. Derby and Miss Louisa F. Lear, contended—

*First,* that Mrs. Derby took the mansion-house estate in Newport, free from the power of sale vested in the executor, and, as a specific devise, not subject to abatement in favor of the general pecuniary legatees in case of deficiency of assets.

Personal estate pays legacies instead of real, and if the will makes no such appropriation, the law does. *Canfield* v. *Bostwick,* 21 Conn. 257; *Martin* v. *Ballou,* 13 Barb. Sup. Ct. R. 119; *Hull* v. *Hull,* 3 Richardson's Eq. (S. C.) R. 65. Even when debts and legacies are charged upon both real and personal estate, the real estate is auxiliary only to the personal. *Paterson* v. *Scott,* 9 Eng. L. & Eq. R. 261; *Whieldon* v. *Spode,* 10 ibid. 130; *Lee, Appellant,* 18 Pick. 288, 293; *Hoes* v. *Van Hoesen,* 1 Barb. Ch. R. 379; S. C. 1 Comstock, 120; *Tole* v. *Hardy,* 6 Cowen, 333; *Leavitt* v. *Wooster,* 14 N. H. 550; *Cornish* v. *Willson,* 6 Gill, 299; *Kirkpatrick* v. *Rogers,* 7 Iredell Eq. (N. C.) R. 44. To vary this rule, it must appear to be the intent of the testator not only to charge the real estate, but to exonerate the personal. *Plenty* v. *West,* 15 Eng. L. & Eq. R. 283. On the other hand, too, specific devises and legacies do not abate with, but are preferred to pecuniary legacies, even though given in the form of, " I wish A. should have my bank stock," at a certain price per share, " or my house " at a certain price, as part of a pecuniary legacy: *White* v. *White,* 2 Halst. Ch. (N. J.) R. 174. Devisees are exempted from abatement even in competition with real estate descended, as well as with personal estate. *Brown* v. *James,* 3 Strobh. Eq. (S. C.) R. 24; *Stuart* v. *Kissam,* 11 Barb. Sup. Ct. R. 271; *Hays* v. *Jackson,* 6 Mass. 149; *Adams* v. *Brackett,* 5 Metc. 280.

*Second,* that Mrs. Derby took the furniture, plate, jewels, pictures, &c. in the house as a *specific* legacy, and not subject, therefore, to abatement with pecuniary legacies, but, from its nature, having a preference over them.

A specific legacy is one of specific chattels, stocks, or even moneys, as the $12,000, given by this will to Mrs. Derby in the Mass. Hospital Life Ins. Co. For distinctions between general, specific, and demonstrative legacies, see *Ashburner* v. *Macguire,*

2 White & Tudor's Leading Cases in Equity, Part I. 381, 382, 387, 392; 2 Wms. Ex'rs, 739, 747, 748. A specific legacy is deemed to be separated, by the will, from the bulk of the testator's property from the time of his death, and not only has preference over a general pecuniary legacy, but is not to be taken for debts until the general fund, descended real estate, and real estate charged with the payment of debts, are exhausted. Ibid. 392, 393, 397, 399, 405, 406, &c.; 2 Wms. Ex'rs, 1056, 740, 836, 837; 2 Jarman on Wills, 392, n. *a*; *White* v. *White*, 2 Halst. Ch. R. 174; *Brainerd* v. *Cowdrey*, 16 Conn. 1; *Spraker* v. *Van Alstine*, 18 Wend. 200; *Humes et ux.* v. *Wood*, 8 Pick. 478; *Washburn* v. *Sewall et al.* 4 Metc. 66, 67; *Plenty* v. *West*, 15 Eng. L. & Eq. R. 283, 291.

*Third.* Mrs. Derby, and Miss Lear, her daughter, take the pecuniary legacies, given to them in the will and first codicil, with a preference in payment over all other legacies of like nature given by the will and codicils, by virtue of an express provision to that effect in the will, afterwards so modified, by the first codicil, as to give them a preference in payment over E. H. Derby, the executor, who, as a legatee, was at first placed by the will, in this respect, upon an equal footing with them. 2 Wms. Ex'rs, 841.

So far as Mrs. Derby is concerned, as her legacies are given to her in lieu of dower, the consideration thus given for a legal right, to wit, the relinquishment of dower, gives her a preference in payment over mere voluntary legatees, without respect to the relative value of her dower and the legacies. 2 Wms. Ex'rs, 839; *Hubbard* v. *Hubbard*, 6 Metc. 53, 54, 60, and cases cited. *Davenhill* v. *Fletcher*, Ambl. 244.

*Bradley*, for R. C. Derby, the infant son of the testator, contended, that the testator, by making a codicil to his will shortly after the birth of his only son and child, for the purpose, avowed in the codicil, of making a provision for him, must be presumed to have intended that the pecuniary legacy of $10,000 therein given to his son should, as necessary to make it effectual, be preferred to all other legacies; or at least, over all those not expressly preferred in payment by the will.

BRAYTON, J.[1] The first question propounded by this bill, is, whether the legacies to Louisa S. Derby, the wife, to Louisa L. Lear, the step-daughter, and to E. Hasket Derby, the executor, are to be paid in preference to the other legacies given by the will and codicils.

By the original will, the testator provides expressly, " that in case there shall be any deficiency of my property, the legacies given to my dear wife, Louisa, and to my step-daughter, Louisa L. Lear, and my nephew, E. Hasket Derby, and my servant, James Purrow, shall be paid in preference to all others.

In his first codicil, he bequeathes to his wife the further sum of $27,000, and to his step-daughter, the further sum of $4,000, the interest of which he had before given for life to his servant, James Purrow ; and he then expressly provides, " that the legacies given, both in my will and codicil, to my dear wife, Louisa, and her daughter, Louisa, and to James Purrow, shall have priority over all others."

The bequest to James Purrow lapsed, by his dying before the testator.

It was not seriously contended at the hearing, by any party represented, that these legacies were not intended to be, and were not, in .fact, preferred to all others, with the single exception hereafter stated and considered; and, indeed, looking at these express provisions inserted by the testator, so pointed and clear, there can be no doubt of the intent of the testator, that those legacies should have priority over the other legacies given by him.

But it was claimed, that the legacy of $10,000, given by the second codicil to Richard C. Derby, the infant son and only child of the testator, is also to be preferred in payment; and the counsel for the infant son, contends, that the clear intent of the testator was, that the sum of $10,000 should be paid in preference to the other general legacies of specific amounts, and indeed to all such legacies.

This gift is contained in the second codicil. After the execution of the first codicil, a son was born to the testator. In this

---

[1] Ames, C. J., having been of counsel in this case, did not sit in it.

codicil, this fact is stated as a reason for making it; and to prevent all doubt as to the validity of the legacies in his prior will and codicil, he expressly affirms the several specific gifts and legacies therein made, and declares that they shall not be revoked by the birth of his son. He in substance affirms, that those gifts shall be and remain as valid, as if such son had been born prior to such gifts being made. He also expresses a desire to make some provision for this son, both by special legacy, (and he uses this term to denote a legacy of definite amount as distinguished from a residuary legacy,) and by making some addition to the settlement made upon his wife. He then proceeds to state what his will now is, and says : " I do hereby, in the most full and ample manner, renew and confirm, and do hereby give, devise, and bequeathe to the several parties enumerated in said will, and testament, and codicil, said specific gifts and legacies.

And I do further *change* and modify my said will and testament, and codicil, as follows:—

" *First.* I give and bequeathe to my said son the sum of ten thousand dollars ; " and

*Secondly,* he gives to his wife, in trust for his son, his real estate at Newport, together with all the rest, residue, and remainder of his estate, which shall remain after payment of his debts, and of said specific gifts and bequests.

Now, there is nothing in the language of this gift of $10,000 to the son, which indicates any preference in payment over any other legacy, given either by the will, or by the codicils.

The testator had, in his prior gifts, expressly preferred the gifts to his wife, her daughter, and to E. Hasket Derby ; and the inference certainly would be, as he had made some preferences, that these were all that he intended to make.

There is nothing in the form of the gift, or in the nature of it, inconsistent with the idea, that it was to stand on the same footing with the other legacies of specific amounts which had not been preferred. There are no words of exclusion of any other legacies, or words of preference over any.

Much stress has been laid by the counsel, upon the expression in this codicil, " I do desire to make some provision for such

son, both by specific legacy," &c.; and in connection with the fact, that the legatee was the only son and heir of the testator, the counsel insists, that it cannot be presumed that the testator meant to cut him off with so small a portion of his estate, and that small portion not assured to him, so that he should be left to share with distant relatives, and to abate with them, if the estate proved insufficient for all.

If we were at liberty to speculate upon the subject, aside from the language of the will, and irrespective of that language, we might perhaps give weight to those suggestions. But we are obliged to construe the *language* of the will, and thence to gather the intent of the testator; and we can only use the facts suggested by the counsel, in order to determine the sense in which particular language may have been used by the testator, and by him intended to be understood by others. This can only be done where the words are capable of more than one sense, and may have been used in the one or the other. Whatever intent the testator may have had at the time, and however clearly expressed, otherwise than in the will, if there be no language in the will itself from which such intent can be implied, no effect can be given to it.

The expression of the testator in this codicil, of a desire to make some provision for the son, is only an express statement of that which must be clearly implied without it. The fact that he does give him a legacy is an expression of his desire and his will that he shall have a provision, and so also are the gifts to the other legatees, expressions of his will that they shall have the sums respectively given to them. His will is that they shall, all of them, be thus far provided for, the son, as well as the other legatees.

Then, it is said, that he is the only son! Can we infer from this fact alone that the testator intended that every gift to him should be preferred to all others? Had we not the language of the will by which we must be guided, we might well have presumed a desire to bestow upon the son the bulk of the estate; and certainly in preference to a step-daughter, that the testator would prefer his own blood. But we see clearly by the provisions for others, that he did not; but that the son should have

much the smaller portion of his estate. If we could infer a preference of this legacy over other legacies from the fact that the legatee is the only son, we should be bound equally to infer a revocation of the other legacies *in toto.* This legacy, then, must stand upon the same footing with the unpreferred legacies.

What abatement shall be made on any or all said legacies?

There is no question made as to any abatement among the preferred legacies, the estate being sufficient to pay those in full.

The unpreferred legacies, for the payment of all which the estate proves insufficient, must abate proportionably; and it will be the duty of the executor, after paying the preferred legacies, to pay out the residue *pro rata* to the several legatees, according to the amount of their respective legacies.

The residuary legacy to Richard C. Derby, the infant son of the testator, is, of course, subject to all the pecuniary and specific legacies, which comprise all others in the will, and in case there be no surplus after paying them, must, in consequence, fail.

As to interest on the legacies, they are, in general, payable at the end of a year from the testator's death. The executor is allowed that period to collect the effects and ascertain the condition of the estate, where no time of payment is fixed by the testator in his will. 11 Ves. 311; 7 ibid. 96; 8 ibid. 410; 6 Mad. 15; 6 Mass. 67; 2 Barr. 231. If the testator directs the time when a legacy shall be paid, it will bear interest from that time; and other legacies will, from the expiration of the year.

In this case, the legacy to E. H. Derby, the executor, was directed to be paid immediately. One legacy of $12,000, and another of $34,000, to Mrs. Derby, were also to be paid immediately, and will draw interest from the time of the testator's death. The other legacies to her and to her daughter, and the legacies to all the other legatees, will draw interest after the expiration of one year from the death of the testator.

The next question propounded by the executor in this bill, and as to which he prays the advice and direction of this court, is, " shall the testator's house at Newport, or the specific bequest of the furniture and other effects, therein set forth, take prece-

dence of any, and which of said legacies, or shall your orator, under the power conferred by said will, be required to sell both of the same, or either, to pay in whole, or in part, any of said legacies, and shall said house, furniture, and effects contribute in any way to the payment of any of said other legacies ? "

By his third and last codicil, the testator makes the following devise : " I give, devise, and bequeathe unto my wife, Louisa, her heirs and assigns forever, all my real estate situate in said town of Newport, consisting of a lot of land, (afterward and before his death sold,) and my lot of land and mansion-house on the south side of Pelham-street, in said Newport, together with all my furniture, plate, pictures, statuary, jewels, and all the personal property in my said mansion-house, to hold to her, my said wife Louisa, her heirs, and assigns forever, and I do hereby order this, my codicil, to be annexed to, and make part of my said last will and testament and codicils heretofore by me made ; I, hereby ratifying and confirming my said last will and testament and codicils heretofore by me made, together with this, to stand as and for my last will and testament, to all intents and purposes."

It is under this codicil, and under this devise, that the widow of the testator now claims to hold the mansion-house estate and the personal property therein, in fee-simple, unconditionally, and not subject to any power of sale by the executor, or to any charges thereon.

The legatees under the will, who are not preferred, claim that the will originally conferred upon the executor the power to sell all the real estate which the testator might have at his decease, together with stocks and other personal property for the payment of the legacies ; that this power has never been revoked ; that the payment of the legacies are charged upon all the testator's estate which he might leave at his death ; and that the estate and property here devised to the widow is made subject to that power, and answerable for the legacies, in the execution of that power. The widow, on the other hand, claims that the power originally given to sell all the estate, real and personal, has, by the specific devise in this codicil, been revoked, so far as it relates to the property, real and personal, contained in this

devise; and that the property therein mentioned vests in her, absolutely; and the question here is, as the parties have presented it, has this power been revoked? If it has not, then this estate is subject to be sold, and the proceeds applied to the payment of all the pecuniary legacies. If it has, then is the estate absolute in the devisee, and not liable to be defeated by the executor.

It may not be necessary here to consider whether the power originally given to the executor, whatever it was, was or was not, as to the mansion-house and lot, in any way, or to any extent, revoked by the second codicil, or to consider the various arguments and suggestions of counsel bearing upon that point. We may well assume, (though it is by no means clear as to that estate,) that it had not been revoked by the second codicil, but that by that codicil, the gift of the residue to the nephews and nieces only had been revoked, and given to the son. We may, therefore, consider that the power, originally conferred upon the executor, by will, still subsisted, and consider whether it has been revoked by the last codicil.

That power is given in these words, in the will: " For the payment of such legacies (referring to the general legacies in the will) and of the residuary legacies hereinafter mentioned, I hereby empower my executor to sell and convey, either by public or private sale, all real estate which I shall have at my decease, and to convert to money all my stocks, mortgages, and other property; and all the residue of my estate, real, personal, and mixed, thus converted into money, which shall remain after the payment of my debts, funeral expenses, and the above legacies, I give, devise, and bequeathe in equal shares to all my nephews and nieces."

A codicil may operate as a revocation of a prior gift, either by an express revocation contained in it, or where there is no such express revocation, by an inconsistent disposition of the same property. 1 Jarman on Wills, 156. This codicil does not expressly revoke any thing. If, therefore, there be in this case a revocation, it is to be implied from the fact, that the last devise is inconsistent with the prior gifts; and we are referred to another rule, by which it is held, that in such case, there is no

revocation except in the precise degree, in which the last gift is inconsistent with the first. 14 Howard, 390; 2 Metc. 202; 5 Sandf. 467; 8 Cow. 56; 22 Maine, 480. To determine then, whether the prior gift, and thereby the power over this estate, has been revoked, we are to inquire whether the devise to Mrs. Derby is consistent with the prior disposition of this estate, and with the execution of the power over it, given in the former will and codicils; and, as the counsel suggests, the great object is to ascertain the intent of the testator, and having ascertained that, effect must be given to it. But then this is to be obtained from the instruments themselves,—from the language used by the testator—and viewing that language in the light of surrounding circumstances, and using it in the sense in which the testator used it. So also, as a general rule, all the several instruments, the will and codicils, must be construed together as one instrument, speaking from the date of the last. But because this rule is not universal in its application, it is, that a different rule of construction is applied to inconsistent devises, in the same will, from that which is applied to inconsistent devises in different instruments, as in a will and codicil. In the first case, if there be a devise to A in fee in a prior clause, and in the latter clause, a devise to B of the same estate in fee, A and B take together in fee; because in that case, the testator is supposed to have had but one will or scheme of devises from the beginning, and so intended, that both should have the estate, the one as much as the other; and as this intent cannot be effected otherwise, they shall take together, as joint tenants, or in common. But if the devise to B, instead of being in the same will, be made by a codicil, as the testator is presumed to have changed the intent which he then had, his last will shall take effect, and the estate go wholly to B. Nevertheless, for most purposes, the several instruments are to be treated as made together, and as one.

Another rule, to which our attention has been called, is, that where a devise is clear and unambiguous in a will, it shall not be revoked by doubtful or ambiguous expressions in a codicil. 1 Jarm. on Wills, 165. And he who claims a revocation is bound to show an intent to revoke, as clear as the intent to devise. This we may assume as an established rule.

It does not however require an express revocation, to make the intent to revoke clear. It is sufficient, that the intent to make a disposition of the estate which is inconsistent with the prior gift is made as clear as the original gift.

The simple question then is, is this devise to Mrs. Derby, of mansion-house and its furniture, consistent with the prior disposition of the testator's estate to these legatees, and with the power given the executor to sell all his estate for their payment? If it is, then the power must be executed, and the estate sold. If, on the other hand, it is not consistent, then the prior disposition must yield, and the power of sale also must yield.

What then was the prior disposition of the testator's estate?

The testator by his prior will and codicils, had directed a conversion of all his estates and property into money,—that all his estate, real and personal, should be blended into one fund, and out of the proceeds thus converted he had given the various legacies enumerated, and which the executor is directed to pay accordingly; and he then gave the balance of that fund to the beneficial use of the son, as residuary legatee. In this disposition, the whole estate was to be sold, and at all events, none was to remain in specie. It was to go to the legatees, general and residuary, in money, and as money. It may be observed also, that the whole estate was thus disposed of absolutely, to the general legatees, to the extent of their legacies, and the balance remaining after their payment, to the residuary legatee absolutely. And although, in the event that any estate remained in specie after the payment of the general legacies, there might have been right of election in the residuary legatee to take it as realty, or in specie, the gift over was of personalty, and on his decease would go to his personal representatives. This election would be in the residuary legatee only, and not in this devisee.

Now what is the devise to Mrs. Derby? The will of the testator is clearly expressed as to her in this codicil. It is, that she shall have the mansion-house estate, with the furniture in fee-simple, and it is to vest immediately. The whole estate having been by the prior will and codicils absolutely disposed

of, this devisee can derive no benefit from the devise, unless we hold that some part of the prior will is revoked. She was to have something, it is clear, or the testator would not have made the codicil. Something was to be changed for her benefit. If the testator did not intend that she should take it absolutely and unconditionally, and to enjoy it in specie, why should he devise it specifically? It is not the proceeds of the estate, but the estate itself, which is given to her. It is quite clear, that if this power is executed, she can derive no benefit from this devise, as, upon conversion, it passes to the residuary legatee. Upon the face of this devise, it is equally inconsistent with any, and every prior disposition of the estate.

But it is said, on behalf of the legatees, that all the estate stands charged with the payment of the general legacies, this estate with the rest, and to the son was given any residue that might remain after their payment; that whatever was given to him was charged with the legacies; that the testator in his codicil had affirmed these legacies in the most express manner, and shown thereby an intent that they should not fail, in any event; and that, by the rules of construction, the court is bound to reconcile any apparent inconsistencies, if it may be, and make one consistent whole.

This theory of the legatees does not strike us as the most reasonable mode of reconciling the apparent inconsistency. This theory, in effect, revokes the gift to the son, and not that to the legatees; but it is difficult to see the degrees, in which the inconsistency of this devise, with the prior gift to the son, and to these legatees, differ. Had the testator, by his will, devised the estate to either or to all of these legatees for life, with remainder to the son in fee, and had then, by a codicil, made the devise to his wife, we must have held both the life estate and the remainder revoked, and the last devise equally inconsistent with both; or if he had devised one half in fee to A., the other half in fee to B., and then by codicil devised the whole in fee to C., it must still be held that the gift to A. and to B. were revoked, and both equally. So, in this case, we can see no reason for holding that the gift to the son is revoked to the extent of this devise in fee, to the wife, of this estate, more than the

gifts to these legatees, or how the devise to her is more consistent with the one, than with the other.

A much more reasonable view, as we think, of this different disposition, is, that this devise is an absolute gift in fee-simple to the wife, as it is upon the face of it; that the power to sell, given in the will, has been revoked as to this devise, and no further,—and that the power still subsists as to other estates, and is to be executed.

But it is said, that this devise being so far inconsistent, and no further, with the power, and with the prior gifts, it is but a reasonable construction to hold, that the testator intended that this estate should still stand charged with the payment of the legacies, and to give the estate to Mrs. Derby, if it should not be necessary for their payment; and that in this way, all apparent inconsistency will be reconciled.

One great difficulty in this theory is, that the testator, by his will, has, for the payment of these legacies, blended together the whole estate, real and personal, into one mass, so that the real estate is liable, in the first instance, to contribute to their payment. There could therefore be no marshalling of the personalty in favor of the realty. The real and personal must contribute proportionately, if the whole of both were not required. So that, if the power is executed at all, it must begin upon the realty and defeat this devise, in whole or in part, and if in part, it destroys it for any useful purpose. Another objection is, that the testator, in his original will, suggests that his whole estate, when converted, may not be sufficient for the payment of the legacies thus given. In his subsequent codicils he gives further legacies to the amount of $14,500, to be paid out of the same estate. He must, therefore, have contemplated it, as possible at least, that these legacies must abate. In his subsequent codicil, he gave further legacies, the effect of which might cause a further abatement. All the prior gifts to his wife had been preferred in payment to these legacies; and he now, by this last codicil, takes part of the fund, out of which they are to be paid, this estate, which he gives to his wife absolutely, and notwithstanding, and in the contemplation, that by it, the legacies may still further abate; but believing, no doubt, that all the donees

under his will and codicil would receive something, and that the general legatees would receive proportionably.

This devise of the mansion-house in Newport, and of the furniture and personal property therein, being specific gifts, must have precedence over all other gifts and legacies, and are not subject to the power of sale, by the executor, for the payment of the legacies, or liable to contribute thereto.

The cases which have been cited by the counsel for the legatees, and upon which they seem to rely with much confidence, as bearing directly upon the point, against a revocation, do not upon examination, determine this question, but are distinguishable from the case before us.    The case of *Duffield* v. *Duffield*, 3 Bligh. N. S. 261, was a devise to A. in fee.   By a subsequent codicil the same estate was devised in fee to the first son of B., who should attain the age of twenty-one years, and take the testator's name.   It was held, that the devise to B. revoked the devise to A.; but as it was to take effect only upon his arrival at age and taking the testator's name, there was an estate in the land in the mean time, and until performance of the condition, which was not revoked, because this was not given to B. by the codicil.   In the case before us, the whole fee is given by the codicil, to take effect presently, leaving nothing for the prior gift to operate upon.   In *Willett* v. *Sanford*, 1 Ves. Sen. 178–180, the testator devised certain land to three trustees, to charitable uses.   By the codicil, he devised the same lands to the same three trustees and two others, on the same trusts. Between the making of the will and the codicil the mortmain act was passed.   The court held, that the devise of the *legal estate* in the codicil, was by force of the mortmain act void; but they held, that there was a trust for a charitable use which was good, as devised in the will, and that the same trust was declared in the codicil, and so was not revoked; that, as to the legal estate, it was immaterial where that was, as it must stand clothed with the trust in whose hands soever it might be; that the disposition of the legal estate was merely formal, and as the substantial and beneficial gift was to the charity, which was affirmed by the codicil, it must stand.   We have no such question here; no prior gift here is affirmed by this codicil.

In *Hearle* v. *Hicks*, (Sugden's Law of Real Property, in the House of Lords, 215,) as the case is stated by Sugden, the testator devised a certain estate to his wife for life. The codicil revoked *several* (that is the statement) of the dispositions of his will of his freehold, copyhold, &c. estates, and, in place of them, devised all his freehold and copyhold, &c. estates, to his daughter. As the clause of revocation did not include the gift to the wife for life, or it was doubtful, and the devise in the codicil was only in place of that which was revoked, the court held the first devise to the wife not revoked. They could not see that the same estate was given to another, as it is in the case before us.

So, in another case cited by the counsel for the legatees, a devise was made to A., subject to a rent charge in favor of B. The codicil revoked the devise to A. and devised the same estate to another. It was held, that the rent charge remained a charge upon the land in the hands of the substituted devisee. As the case is stated, the court could not have held otherwise. The testator revokes his devise to A., which was of an estate charged with this rent, and substituted another devisee to the same devise. In the present case, no reference is made to any particular gift or devise. This last devise is not substituted to any other in the will, by which it may be limited or restrained to less than it imports on its face. There is another case which proceeds upon the same principle, (*Becket* v. *Harden*, 4 M. & Selw. 1,) where the testator devised his plantation in Jamaica, to J. B., to the use and intent that W. B. should have an annuity for life, out of the same, of £150, with power of distress and reëntry for non-payment. By a codicil, the testator revokes that part of his will in which he gave and devised to J. B. all his estate in the Island of St. Kitts, and he gives and bequeathes *said property* in said island to J. P. and his heirs forever. There is a reference to a prior gift which only he revokes, namely, that which he had given to J. B. He did not revoke the annuity; and it was held, that J. P. took by the gift precisely what had been revoked, and no more, and so that the annuity must, as by the first devise to J. B., be paid out of the estate.

What disposition shall the executor make, under his power of sale for the payment of legacies, if any, of a burial lot at Mount

Auburn, near Boston, where the body of the testator's first wife lies buried?

The most natural answer to such a question,—that which would most naturally arise, and that unbidden, from a humane mind, would be, none; to leave it undisturbed.

This lot is held under a charter to the cemetery corporation, and under that charter, all the lands of the corporation are dedicated to burial purposes. This lot was purchased by the testator for a burial place for his family. That he should deliberately intend that it should be sold and go into the hands of strangers, it is difficult to believe, without the most express direction. It is the more difficult in this case, as within it are deposited the remains of his former wife; and could he intend that those remains should be disturbed?

He had devoted this lot to pious and charitable uses, as a place of burial for the members of his own family! Did he mean to revoke it? It is a violation of feelings of a sacred nature, this idea of making merchandise of the repose of the dead;—and especially of one's own family; and if anything be against the policy of the law, it is lightly to disturb those hallowed feelings, which are associated in the minds of most, with the resting-place of the dead. It could not have been in the contemplation of the testator, that this lot should be sold out of his family, nor could he have contemplated it as property, in any such sense as to fall within the power given to the executor; and without an express direction to sell this particular lot, we think we shall not be warranted in advising the executor to sell it.

It must pass to the heir at law, and be represented by him, as a member of the cemetery corporation, according to the provisions of their charter.

As to the legacies given in trust to the executor for Isaac Foster Coffin, and Sarah Ellen Rogers, as the trustee resigns the trust as to each, a new trustee must be appointed in his place, to receive the said legacies.

Louisa S. Derby, the widow of the testator, is entitled under the will and codicils:

*First*, To the mansion-house, and to the furniture, and other personal property therein, given by the last codicil.

*Second,* To the amount of the funds deposited with the Massachusetts Hospital Life Insurance Company, given in the will.

*Third,* To the sum of thirty-four thousand dollars, given by the will.

*Fourth,* To the further sum of twenty-seven thousand dollars, given by the first codicil.

The devise and bequest to her, in the last codicil, are in addition to the legacies, given her by the prior will and codicils.

Another question propounded by the executor, is, whether the bequest to John Turner Sargent is valid, as set forth in said will?

The bequest is in these words: " I give, devise, and bequeathe to the Rev. John Turner Sargent of said Boston, five thousand dollars, in trust, to apply the same to the relief of the destitute, in such manner as charity is usually distributed by the ministers at large in the city of Boston."

The executor suggests that this legacy is for a charitable use, and that use indefinite and vague in its character, and might be, and would be in some states, held to be void, as being too vague and indefinite to be carried into effect by a court of equity; and that there are conflicting opinions upon the subject of gifts to charities. He has referred us to several cases decided in Massachusetts upon this subject. 16 Pick. 107, *Gerry* v. *Emery;* 24 ibid. 136, *Burbank* v. *Whitney;* and 4 Metc. 378, *Bartlet* v. *Nye,* in which the court recognize the validity of such gifts only under the stat. 43 of Eliz. c. 4, where the provisions of that statute have been adopted, and which the court held to have been adopted in Massachusetts. On the contrary, the case in Maryland, of *Taskiel* v. *Attorney-General,* 5 Har. & John. 392, was also referred to, in which such a gift was held invalid, because that statute had never been adopted in Maryland.

The supreme court of the United States, in 4 Wheat. 1, *Baptist Association* v. *Hart's Ex'rs,* seem to have held the same opinion, that such gifts were void; and held so mainly, because they could find no precedent for any jurisdiction of a court of chancery in any such case, prior to the statute of Elizabeth, and therefore came to the conclusion, that the only remedy in such

case was created and given by that statute in England, and could exist in this country only by force of similar statutes. Down to the time of these decisions, there was little light to be had upon the subject of chancery jurisdiction over such gifts, prior to the reign of Elizabeth, or even to the earlier part of her reign. But by the more recent investigations which have been made in England into these earlier records, and especially, into the records of the chancery, all doubt which before existed seems now to be dispelled; and from a series of adjudicated cases, the subject of charities appears to have been an usual subject of chancery jurisdiction, long prior to the 43 of Elizabeth, and even to the beginning of her reign. Such gifts were held valid, not only in equity, but were upheld at law, wherever the legal remedies would apply to them. In the more recent case before the supreme court of the United States, *Vidal et al.* v. *City of Philadelphia*, 2 Howard, 128, this question would seem to be set at rest. The laborious investigations of the opening counsel for the city of Philadelphia, in that case, and the long series of adjudged cases, both at law and in equity, beginning long prior to the reign of Elizabeth, and coming down to the end of that reign, as they are cited and applied in the elaborate and exhausting argument of the distinguished counsellor, show clearly and conclusively, that these charitable gifts do not depend for their validity upon that statute, but were held good at common law, long before then, and always; that these were, at all times, a subject of chancery jurisdiction, as all other trusts were; and that this statute provided only a new remedy for any breach of trust, or misapplication of the funds. At this day, therefore, it may be regarded as a part of the common law of this country to uphold and give effect to such uses.

It was not necessary, it seems in England, to the validity of such uses, that the trustee, who was to administer the charity, should be named. In every case where this was omitted, if it clearly appeared that a trust was intended by the testator, the court would appoint a trustee, upon the principle in equity, that a trust shall never fail for want of a person to execute it. Neither was it natural that the *cestuis que trust*, or persons who were ultimately to receive the benefit of the charity, should be

then ascertained, or that they should be so described as to be made certain. It was sufficient that there existed a discretionary power somewhere over the application of the testator's bounty to the object specified. It was sufficient to state the general object of the gift, and that too in a very general form; for example,—for the advancement of the Christian religion in North America, 5 Bro. Ch. 171; for a lying-in hospital, 7 ibid. 712; for the benefit of poor clergymen, 5 ibid. 517; for the poor inhabitants of St. Leonards, Amb. 422; for poor dissenting ministers, ibid. 524. If the general intention is consistent with the rules of law, though the mode of application is not pointed out, the court will direct the mode. 4 Ves. Jun. 329, *Thelluson* v. *Woodford.*

In this case, however, the trustee is named,—the purpose of the gift clearly stated, " to apply the same to the relief of the destitute,"—and besides, the mode of administering the fund is referred to as an existing, usual mode, well understood in Boston, where it was to be dispensed, and by means of which, it may be properly applied to such object as the general purpose of gift—the relief of the destitute—requires. In all charitable uses, or nearly all, the persons ultimately to be benefited by the charity are uncertain, they are only to be ascertained by the general purpose; and if that be indicated sufficiently to bind the conscience of the trustee, as it is said, it is enough.

In this case, it is to go to the destitute,—to the poor; but it is impossible to designate who may be poor or destitute. This must necessarily be left to the trustee in the execution of the trust, and in the exercise of a just discretion.

But if this were not so at common law, and the validity of such uses depended in England upon the statute, and was only to be upheld in this country where the principles of that statute have been adopted, still the gift must be sustained here.

The Colonial legislature of Rhode Island, in 1721, passed an act entitled " an act to redress misemployment of property given to certain charitable uses." The immediate occasion of passing this act was the misapplication of certain property devised by the will of John Clarke, (the agent who procured the charter of 1663,) made in 1676: and proceedings were commenced im-

mediately after the passage of the act against the trustees under the will, and a decree finally entered up by the town council of the town of Newport, against the trustees, as well to compel the proper application of the funds to the use for which they were given, as to hold the trustees accountable for the injuries and waste by them committed. The preamble of this act is copied from that of the statute of Elizabeth ; and so far as it goes, is word for word with it; omitting only the long enumeration of charitable uses to which property had been limited, and mentioning two only, namely, "for the relief of the poor, and the bringing up of children to learning,"—those two being the uses, and the only uses raised under the will of John Clarke,— and "for redress and remedy whereof," the statute then provides, that the town councils, within their respective jurisdictions, shall be empowered "to inquire as well by the oaths of twelve lawful men, or more, of such town, as by all other lawful ways and means, of all such gift limitations, &c." using the language of the English statute. The second section authorizes the town council, upon a full hearing, "to set down such orders, judgments, and decrees, that the lands, &c. may be duly and faithfully employed to and for the charitable uses and intent of the donors and founders thereof,"—which orders, judgments, and decrees, not being contrary or repugnant to the orders, statutes, and decrees of the donors or founders," shall stand firm and good ; using again the exact language of the English statute. The third section provides, "that upon finding any such breach of trust, negligence, misemployment, mismanagement, or under-letting any such lands, &c." judgment and execution shall be given forth against the misemployers or misimprovers of the same. The fourth section provides for an appeal to the governor and council, then constituting the superior court of judicature of the colony, "who are hereby empowered to alter, mitigate, reverse, or confirm such sentence, order, or judgment of such town council, and to give a new and final judgment and determination in such case, as they shall think fit and agreeable to equity and good conscience, according to the true intent and meaning of the donors or founders thereof."

This statute is evidently taken from the statute of Elizabeth. It is in substance and effect like it. It gives the same power, for the same purpose, to be exercised in substantially the same way, though by a different jurisdiction. And what is particularly worthy of note is, that upon the appeal, the governor and council are to make the final decree in the matter, as they shall think fit and *agreeable to equity and good conscience,* according *to the true intent and meaning of the donor,* that is, as in chancery, and according to the rules of equity.

This statute continued in force from 1721, when it was enacted, to the revision of the statutes in 1844, substantially the same. In 1765, on the establishment of the supreme court, the appeal was given to that court. In 1798, that part of the act providing for the inquiry by a jury of twelve men was stricken out. In the revision of 1844, the preamble was omitted, and the first section so changed as to read thus: " Whenever any real or personal property, or the use, issues, or profit, if any, have been or shall be limited, appointed, or assigned by any person, to and for the relief of the poor or the bringing up of children to learning, or for any other specific purpose, and have not been, or shall not be employed according to the charitable intent of the donor or founder thereof, it shall and may be lawful for the town council to inquire of and concerning the same," and to decree as before.

If this gift were not good at common law, it is clearly within this act, and falls within the decisions under the statute of Elizabeth. This statute now covers every case of charitable use, where the purpose expressed is specific, and will cover all the cases enumerated in the English statute.

Our instruction to the executor therefore, is, to pay this bequest to charitable uses, as a good and valid bequest.

Let a decree be entered embodying these instructions.